UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIEL M. DILELLA, *et al.*,<br><br>    Plaintiffs,<br><br> v.<br><br>RENEE BURCHARD, *et al.*,<br><br>    Defendants. | Case No. 24-cv-1675 (JMC) |

### MEMORANDUM OPINION

  Daniel M. DiLella and Frank Giordano filed this case against Renee Burchard, Kirsti Garlock, Anna Laymon, and Keri Potts—all former employees of the America 250 Foundation—along with five anonymous individuals. In doing so, DiLella and Giordano were returning a favor: the former employees had previously sued DiLella and Giordano in this Court, in a case captioned *Burchard v. America 250 Foundation*, No. 1:22-cv-00497. DiLella and Giordano allege that the former employees' filing of *Burchard* amounted to abuse of the legal process, malicious prosecution, and civil conspiracy. ECF 1 ¶¶ 68–87. Because DiLella and Giordano's complaint does not plausibly allege any of those claims, the Court **GRANTS** the motion to dismiss.[1]

**I. BACKGROUND**

 **A. The America 250 Foundation**

  On July 4, 2026, the United States will celebrate the 250th anniversary of the adoption of the Declaration of Independence. ECF 1 ¶ 1. In 2016, Congress created the U.S.

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

1

Semiquincentennial Commission to coordinate celebrations for the occasion. *Id.* ¶ 2; *see also* United States Semiquincentennial Commission Act of 2016, Pub. L. No. 114-196, 130 Stat. 685. Daniel DiLella was appointed Chairperson of the Commission and Frank Giordano as its Executive Director. ECF 1 ¶ 4. As mandated by statute, the United States Department of the Interior conducted a public bidding process to identify a nonprofit partner to serve as an "Administrative Secretariat" that would assist the Commission in fundraising, sponsorship, and planning. *Id.* ¶ 31; *see* § 9(b), 130 Stat. at 691–92. Following the bidding process, the Department selected American Battlefield Trust to serve in this capacity. ECF 1 ¶ 32. American Battlefield Trust then created a separate nonprofit entity—the America 250 Foundation—to assist the Commission. *Id.* ¶ 33.

The defendants in this case were each employed by America 250 in executive staff positions before voluntarily leaving their positions. ECF 1 ¶¶ 35, 40. Renee Burchard served as Chief Administrative Officer and Chief of Staff. *Id.* ¶ 36. Kirsti Garlock was a part-time consultant before becoming the Chief Legal Officer. *Id.* ¶ 37. Anna Laymon served as Vice President of Programs and Planning. *Id.* ¶ 38. And Keri Potts served as Vice President of Communications and Public Relations. *Id.* ¶ 39.

### B. The *Burchard* Litigation

In early 2022, these same former employees filed a lawsuit—*Burchard v. America 250 Foundation*—in this district. ECF 1 ¶¶ 41–42. The original *Burchard* complaint named as defendants the America 250 Foundation, the Semiquincentennial Commission, and American Battlefield Trust. *Id.* ¶ 43. The complaint alleged financial mismanagement, violations of the Commission's rules and bylaws, and gender-based discrimination. *Id.* ¶ 41. Although DiLella and Burchard were not yet named as defendants in the original complaint, allegations about their conduct were central to the complaint's claims. *See, e.g.*, *id.* ¶¶ 34, 43–44, 46–50, 155–57. After

the complaint was filed, the case received some media attention. *Id.* ¶ 56. The Wall Street Journal reported that "[t]he foundation, the commission and an affiliated nonprofit—collectively called America250—were sued on discrimination claims last month by four female former executives of the foundation who alleged they were effectively forced out by the 'boys club' running the project after objecting to what their lawsuit says was 'cronyism, self-dealing, mismanagement of funds, potentially unlawful contracting practices and wasteful spending.'" *Id.* ¶ 56. And the Washington Post quoted Burchard as saying that America 250 "was run by a cabal." *Id.*

After that initial wave of press coverage, the former employees filed an amended complaint in *Burchard*, adding DiLella and Giordano as defendants. ECF 1 ¶ 43. The former employees obtained summonses directed to DiLella and Giordano but never served process on them. *Id.* ¶ 44. The amended complaint generated some additional press coverage, including a *Philadelphia Magazine* article reporting that the "situation amounted to a 'big cabal of men, passing down their dictates.'" *Id.* ¶ 56. DiLella and Giordano allege these media statements were false, misleading, and directed at DiLella and Giordano, "with the clear intent of harming their reputations and interfering with their roles on the Commission and with the America250 Foundation." *Id.* ¶ 57.

At some point after the amended complaint was filed, the White House removed DiLella from his position as Chairperson of the Commission. ECF 1 ¶ 65. Later, Giordano was replaced too. *Id.* ¶ 66. DiLella and Giordano attribute their removal to the allegations in *Burchard* about their wrongdoing and to the media coverage of the case. *Id.* ¶¶ 62–66.

In response to the *Burchard* litigation, the America 250 Foundation retained an outside firm—Constangy, Brooks, Smith & Prophete LLP—to conduct an independent investigation of the claims in the complaint. ECF 1 ¶ 48; ECF 1-1 at 2. The firm memorialized its findings in a September 2022 report. ECF 1-1 at 2. According to the Constangy report's executive summary,

3

which DiLella and Giordano attached to their complaint, the investigation "did not find support for the conclusion that there has been gender discrimination at the Foundation or retaliation on the basis of alleged protected activity." *Id.* at 4. However, the firm noted that its findings were limited to "information to which [it] had access," that it was "not able to interview the Claimants," i.e., the former employees, and that "witnesses who may have relevant information declined to be interviewed." *Id.*

About two months after the Constangy report's release, the former employees voluntarily dismissed DiLella and Giordano from the *Burchard* lawsuit. ECF 1 ¶ 45. The notice of voluntary dismissal explained why the former employees were taking that step: "[The former employees] have concluded that they can obtain the remedy and redress they seek by focusing their case on the institutions and organizations named in the Amended Complaint." *Burchard* ECF 35, at 1–2.[2] After the voluntary dismissal, but before this case was filed, the Court ruled on motions to dismiss in *Burchard*. *See Burchard* ECF 38. Several, but not all, of the claims against America 250 survived, while all other defendants were dismissed. *Id.* Before they were voluntarily dismissed, DiLella and Giordano had been named in some of the claims that survived the motions to dismiss. *See Burchard* ECF 17 at 66–77 (counts 2, 3, and 4). Eventually, the remaining parties in *Burchard* settled the surviving claims. *See Burchard* ECF 51.

C. This Litigation

DiLella and Giordano filed this action against the former employees in the Eastern District of Pennsylvania, alleging malicious prosecution, abuse of process, and a civil conspiracy. *See* ECF 1. DiLella and Giordano allege that the former employees filed a "false and malicious

---

[2] Courts can take judicial notice of public records at the motion to dismiss stage. *See, e.g.*, *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005). Citations to the docket of *Burchard v. America 250 Foundation*, No. 1:22-cv-00497, are styled as "*Burchard* ECF ##."

Discrimination Lawsuit"—*Burchard*—"which wrongly accused [DiLella and Giordano] of committing egregious wrongs" at the Commission. *Id.* ¶ 62. Despite purportedly knowing their suit was frivolous, the former employees allegedly "plastered the false allegations all over the media to ensure such false allegations would have the maximum damage to" DiLella and Giordano. *Id.* ¶ 61. DiLella and Giordano claim they suffered reputational harm and lost their positions at the Commission as a result of the *Burchard* lawsuit. *Id.* ¶¶ 62–66. The former employees filed a motion to transfer the case to this district, which was granted. *See* ECF 10; ECF 17. Once here, the former employees filed a motion to dismiss for failure to state a claim. *See* ECF 27.

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court must "treat the complaint's factual allegations as true" and afford the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). That said, a court "need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012). A court deciding a motion to dismiss can take judicial notice of "public records from other proceedings." *Youkelsone v. FDIC*, 910 F. Supp. 2d 213, 221 (D.D.C. 2012), *aff'd*, 560 F. App'x 4 (D.C. Cir. 2014).

## III.    ANALYSIS

The complaint fails to state a claim for malicious prosecution, abuse of process, or conspiracy. The Court takes each claim in turn.

### A. Malicious Prosecution

There is a threshold dispute about which state's law—DiLella and Giordano say Pennsylvania, the former employees say the District of Columbia—applies to the malicious prosecution claim. *Compare* ECF 29 at 9–11, *with* ECF 32 at 6–8. The Court need not decide that question, because this claim fails under either state's law.

Pennsylvania has codified the common law tort of malicious prosecution in the Dragonetti Act,[3] 42 Pa. Cons. Stat. §§ 8351–54, which requires plaintiffs to prove, among other things, that the "underlying proceedings"—the ones that were allegedly malicious—"terminated favorably" to the plaintiffs bringing the malicious prosecution claim. *Kilinc v. Tracfone Wireless Inc.*, 757 F. Supp. 2d 535, 539 (W.D. Pa. 2010) (citing *Shaffer v. Stewart*, 473 A.2d 1017, 1020 (Pa. Super. Ct. 1984)); *see also* Pa. Cons. Stat. § 8351(a)(2) (2024). The District of Columbia requires proof of the same thing. *See Pitt v. District of Columbia*, 491 F.3d 494, 501 (D.C. Cir. 2007) (citing *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980)).

In both places, a plaintiff must clear a high bar to establish that a voluntary dismissal amounts to a favorable termination. In Pennsylvania, "unless the voluntary withdrawal of the prior case was 'tantamount to an unbidden abandonment of a claim brought in bad faith,' the discontinuance of the underlying action does not constitute a favorable termination." *LabMD, Inc. v. Tiversa Holding Corp.*, 785 F. App'x 74, 78 (3d Cir. 2019) (quoting *Contemporary Motorcar v. MacDonald Illig Jones & Britton LLP*, 783 WDA 2012, 2013 WL 11253857, at *4 (Pa. Super. Ct. Sept. 19, 2013)). In D.C., the termination of the prior case "must reflect on the merits of the

---

[3] The former employees fault DiLella and Giordano for failing to "cite[] the statute"—the Dragonetti Act—on which the malicious prosecution claim rests. ECF 32 at 11. But DiLella and Giordano "did not need to plead law or match facts to every element of a legal theory." *Sampson v. D.C. Retirement Bd.*, No. 24-cv-2601, 2025 WL 2494696, at *10 (D.D.C. Aug. 29, 2025). Instead, the question is whether the complaint "allege[s] facts supporting" the claim under the Dragonetti Act, regardless of how those facts were "package[d]." *Id.*

underlying action" and be "of such a nature as to indicate the innocence of the accused." *Brown v. Carr*, 503 A.2d 1241, 1245–46 (D.C. 1986).

Finally, in both jurisdictions—despite DiLella and Giordano's insistence otherwise, *see* ECF 29 at 17—the "favorable termination" determination is a question of law for the court to resolve. *See Babul v. Therapeutics*, No. 15-cv-2937, 2018 WL 994217, at *4 (E.D. Pa. Feb. 21, 2018) ("Pennsylvania courts . . . have acknowledged that the favorable termination element of a Dragonetti action is largely a question of law for a court to decide."); *Whelan v. Abell*, 953 F.2d 663, 669 (D.C. Cir. 1992) ("Favorable termination is ordinarily 'a question of law . . . to be determined by the trial court.'" (quoting *Weisman v. Middleton*, 390 A.2d 996, 1003 (D.C. 1978))). The "circumstances under which the" plaintiff in the former suit "acted" in terminating that litigation is, no doubt, a question of fact for the jury, but the ultimate question of whether "the termination was sufficiently favorable to the accused" is a question of law. *Miller v. Pa. R. Co.*, 89 A.2d 809, 812 (Pa. 1952). That clarifies the Court's inquiry at this stage: The Court accepts as true DiLella and Giordano's factual allegations regarding the "circumstances under which" they were dismissed from *Burchard*, *id.*, and the Court then decides for itself whether, in light of those facts, it is plausible to "conclu[de]" that the litigation terminated in DiLella and Giordano's favor, *Weisman*, 390 A.2d at 1003 (describing the "conclusion based on . . . legal judgment" that a court must make); *see also Ho v. Garland*, 106 F.4th 47, 51 (D.C. Cir. 2024) (outlining pleading standard). Under that standard, the complaint fails to plausibly allege favorable termination.

The complaint's principal allegations as to favorable termination all relate to the Constangy report. ECF 1 ¶ 48. The complaint alleges that report "prove[d]" the allegations in the former employees' lawsuit "false." *Id.* And the report's executive summary—which was attached to the complaint—does say that Constangy found no "support for the conclusion that there has been

7

gender discrimination at the Foundation or retaliation on the basis of alleged protected activity." ECF 1-1 at 4. DiLella and Giordano argue that because the former employees "voluntarily withdrew their claims . . . less than one month after receiving [the] report," it is "reasonable . . . to infer" that the report "inspired" the former employees to "withdraw their meritless claims . . . rather than risk imminent dismissal." ECF 29 at 17. If proved, that sequence of events, DiLella and Giordano conclude, would support a finding of favorable termination. *See id.*

The problem for DiLella and Giordano is that other facts alleged in the complaint or of which the Court can take judicial notice render that legal conclusion implausible. After the Constangy report was issued, the former employees "continue[d] to pursue" against the remaining defendants in *Burchard* "the same claims" that they had voluntarily dismissed as to DiLella and Giordano. *LabMD, Inc.*, 785 F. App'x at 78; *see Burchard* ECF 17 at 66–77; *Burchard* ECF 38. Those claims, which included gender discrimination and constructive discharge, were premised in large part on the former employees' allegations about DiLella and Giordano's conduct. *See, e.g.*, *Burchard* ECF 17 ¶¶ 78, 92–96, 139, 177, 235, 368. So although the Constangy report found that the former employees' entire complaint—not merely the claims against DiLella and Giordano— was without merit, ECF 1-1 at 2, the former employees continued to press those claims against the Foundation. And DiLella and Burchard's conduct was still at issue in those claims. Given that, it is not plausible to infer that the former employees' choice to voluntarily dismiss DiLella and Giordano after issuance of the report was "tantamount to an unbidden abandonment of a claim brought in bad faith" or "indicate[s] the innocence" of DiLella or Giordano. *LabMD, Inc.*, 785 F. App'x at 78; *Brown*, 503 A.2d at 1245.

Instead, the "obvious alternative explanation," *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009), for DiLella and Giordano's dismissal from *Burchard* is the one the former employees gave on their

notice of dismissal. The former employees "concluded that they c[ould] obtain the remedy and redress they s[ought] by focusing their case on the institutions and organizations named in the Amended Complaint." *Buchard*, ECF 35 at 1–2. Courts can and regularly do take judicial notice of the reason a plaintiff gave for a voluntary dismissal when deciding the favorable termination question on a motion to dismiss. *See, e.g.*, *Thorp v. District of Columbia*, 142 F. Supp. 3d 132, 145 (D.D.C. 2015) (taking judicial notice of the reason for dismissal on docket); *Harris v. District of Columbia*, 696 F. Supp. 2d 123, 134 (D.D.C. 2010) (same). The Court does the same here. And that fact further confirms that DiLella and Giordano's inference that they were voluntarily dismissed from *Burchard* because the former employees knew their claims against DiLella and Giordano were meritless "is not a plausible conclusion." *Ashcroft*, 556 U.S. at 682.

DiLella and Giordano's only other argument on the favorable termination issue is that they were dismissed "with prejudice." ECF 1 ¶ 80. The "legal effect" of the prior dismissal, however, is not a factual allegation—it is a "legal conclusion." *Neighbors of Casino San Pablo v. Salazar*, 773 F. Supp. 2d 141, 147 n.11 (D.D.C. 2011). The Court therefore need not accept DiLella and Giordano's characterization of the dismissal as true. *See id.* And because the notice of dismissal did not say whether DiLella and Giordano were being dismissed with or without prejudice, *see Burchard* ECF 35, the dismissal was, in reality, "without prejudice," Fed. R. Civ. P. 41(a)(1)(B). That too undermines the plausibility of the inference that the dismissal amounted to a favorable termination. *See Thorp*, 142 F. Supp. 3d at 145 (under D.C. law favorable termination "normally requires a showing of dismissal with prejudice"); *Harris*, 696 F. Supp. 2d at 134 (same).

## B. Abuse of Process

The Court turns next to the abuse of process claim. Once more, there is something of a dispute about which law—Pennsylvania or D.C.—applies. But as DiLella and Giordano rightly

9

concede, there is no material difference between the standards for an abuse of process claim in the two jurisdictions. *See* ECF 29 at 10. As it was with the malicious prosecution claim, then, the Court need not resolve any choice of law issue.

To prove abuse of process under Pennsylvania law, a plaintiff must establish "that the defendant (1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed, and (3) that harm was caused to the plaintiff as a result." *Keim v. County of Bucks*, 275 F. Supp. 2d 628, 635 (E.D. Pa. 2003) (citing *Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. Ct. 2002)). In other words, "a court should ask whether there has been a 'perversion' of the process, or, whether a legal process has been used 'as a tactical weapon to coerce a desired result that is not the legitimate object of the process.'" *Gen. Refractories Co. v. Fireman's Fund Ins.*, 337 F.3d 297, 307 (3d Cir. 2003) (quoting *McGee v. Feege*, 535 A.2d 1020, 1026 (Pa. 1987)). Much the same under D.C. law, albeit reformulated as two elements: a plaintiff must establish "(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." *Thorp*, 319 F. Supp. 3d at 22 (quoting *Hall v. Hollywood Credit Clothing Co.*, 147 A.2d 866, 868 (D.C. 1959)).

In both jurisdictions, the mere initiation of a lawsuit, without more, cannot be the basis of an abuse of process claim. *See Bell v. Weinstock, Friedman & Friedman, P.A.*, 341 A.3d 1, 22 (D.C. 2025) ("[K]nowingly bringing suit on an unfounded claim . . . by itself is not an abuse of process."); *Polysciences, Inc. v. Masrud*, No. 22-1767, 2023 WL 3377084, at *2 (3d Cir. May 11, 2023) ("[A]buse-of-process claims pertain to a perversion of the litigation process *after* it has been initiated, and not to the initiation of the process itself." (citing *McGee*, 535 A.2d at 1023)). Instead—and unlike malicious prosecution—the abuse of process tort only targets "improper use" of the judicial machinery "after issuance" of process. *Morowitz*, 423 A.2d at 198; *see also Bown*

*v. Hamilton*, 601 A.2d 1074, 1080, n.14 (D.C. 1992) (comparing abuse of process and malicious prosecution); *Publix Drug Co. v. Breyer Ice Cream Co.*, 32 A.2d 413, 415 (Pa. 1943) ("Malicious use of civil process has to do with the wrongful initiation of such process, while abuse of civil process is concerned with a perversion of the process after it is issued.").

These rules explain why the abuse of process claim fails. At bottom, this claim is centered on the former employees' initiation of *Buchard*. *See* ECF 1 ¶¶ 69–70 (describing the "filing" of the "bogus" lawsuit as the use of "legal process" for an "[im]proper purpose"); *id.* ¶ 73 (alleging the former employees had "an ulterior motive and improper purpose in filing" *Burchard*). Even granting DiLella and Giordano's allegation that the former employees filed *Buchard* so that they could make otherwise defamatory statements to the media under a "shield of judicial privilege against any claims of defamation," ECF 29 at 18, there is no allegation that the former employees did anything within the *Burchard* litigation to obtain an illegitimate result. Beyond the initiation of the lawsuit, DiLella and Giordano point to no legal process—motions, discovery requests, or anything else of the like—that the former employees abused. *See Pellegrino Food Prods. Co. v. City of Warren*, 136 F. Supp. 2d 391, 407 (W.D. Pa. 2000) (explaining that "process" in Pennsylvania "encompasses all of the procedures incident to the litigation process"); *Bown*, 601 A.2d at 1079 (explaining that "abuse of process . . . lies where the *legal system*" has been abused (emphasis added)). Instead, DiLella and Giordano rely on statements that the former employees made to the press. *See* ECF 1 ¶ 74. But statements to the media are not legal process.[4] Without any allegations as to illegitimate process, this claim fails.

---

[4] The timing of the allegedly defamatory statements further undermines DiLella and Giordano's theory that the lawsuit was filed so that the former employees could go on to make defamatory statements. Two of the three articles cited in the complaint predate the filing of the amended complaint in *Burchard*—which was the first time DiLella and Giordano were named in the suit. *Compare* ECF 1 ¶ 56 (citing Wall Street Journal article from March 2022 and Washington Post article from April 2022), *with id.* ¶ 43 (amended complaint filed in June 2022).

### C. Conspiracy

DiLella and Giordano have not plausibly alleged that the former employees' actions in *Burchard* amounted to either malicious prosecution or abuse of process. The complaint therefore necessarily fails to plausibly allege a conspiracy to commit those acts. *See Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 512 (E.D. Pa. 2014) ("Pennsylvania law mandates that absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act."); *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000) ("Civil conspiracy depends on performance of some underlying tortious act. . . . It is thus not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort.").

\* \* \*

The former employees' motion to dismiss for failure to state a claim, ECF 27, is **GRANTED**, and DiLella and Giordano's' complaint is **DISMISSED.** A separate order accompanies this memorandum opinion.

**SO ORDERED.**

					_____
					JIA M. COBB
					United States District Judge

Date: March 2, 2026